IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL A. GUZMAN,

        Plaintiff,

v.                                                            No.   1:14-cv-00055 KG-SCY

THE GEO GROUP, INC., *a corporation*
*doing business in the State of New Mexico*;
TIMOTHY B. HATCH, *individually and in*
*his official capacity as Warden for the Northeast*
*New Mexico Correctional Facility*; NEW MEXICO
CORRECTIONS DEPARTMENT, *an agency of*
*the State of New Mexico*; STATE OF NEW MEXICO,
GREGG MARCANTEL*, Secretary of the New Mexico*
*Corrections Department*, COLLEEN MCCARNEY,
*individually and in her official capacity, as an*
*employee of the New Mexico Corrections Department*,

        Defendants.


MEMORANDUM OPINION AND ORDER

      This matter comes before the Court upon Defendants the GEO Group, Inc. and Timothy

B. Hatch's Motion for Summary Judgment and Memorandum of Law in Support (Motion for

Summary Judgment), filed June 3, 2014.  (Doc. 32).   On July 7, 2014, Plaintiff responded and

Defendants replied on August 4, 2014.  (Docs. 40 and 54).  Having reviewed the Motion for

Summary Judgment, the accompanying briefs, and the evidence of record, the Court grants

Defendants' Motion for Summary Judgment as to Plaintiff's federal claims for violation of 42

U.S.C. § 1983 in Count I.  The Court, however, declines to exercise supplemental jurisdiction

over Plaintiff's New Mexico Tort Claims Act (NMTCA) and state law negligence claims and,

accordingly, dismisses Plaintiff's state law claims in Count II and Count III without prejudice.

I.      *The Complaint for Damages (Doc. 1-1)*

Plaintiff Michael A. Guzman (Plaintiff) brings this lawsuit under 42 U.S.C. § 1983, asserting a Fourteenth Amendment substantive due process violation and an Eighth Amendment violation for failure to protect and provide medical treatment (Count I). Plaintiff also brings a cause of action under the New Mexico Tort Claims Act (NMTCA), NMSA 1978, §§ 41-4-1 to 41-4-27, for negligence (Count II), and a state law claim for negligence (Count III).

Defendants now move for summary judgment on all Counts. Plaintiff opposes the Motion for Summary Judgment in its entirety.

II.     *Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-movant may not avoid summary judgment by resting upon the mere allegations or denials of its pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

2

*III.      Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff*[1]

The New Mexico Corrections Department (NMCD) contracts with the Town of Clayton

to house state inmates at the Northeast New Mexico Detention Facility (NENMDF).  (Doc. 32-1)

at 1.  Pursuant to that contract, NMCD retains the responsibility for providing health care

services to inmates, including the provisions of unimpeded access to sick call, 24 hours per day

emergency medical care, regular physician visits, health care administration, and on-site medical

staff.  *Id.* at 2, 7–9.  NMCD also contracts directly with private companies to provide medical

care to NMCD prisoners at certain facilities, including NENMDF.  *Id.* at 2, 7.

The GEO Group (Defendant GEO Group) contracts with the Town of Clayton to operate

NENMDF.  *Id.* at 1.  Defendant GEO Group's only duties with respect to NMCD inmates'

medical care are to provide CPR availability, security for offsite medical care and appointments,

and appropriate space.  *Id.* at 3, 7.   Timothy B. Hatch (Defendant Warden Hatch), is the Warden

of NENMDF.  *Id.*  When an inmate in the custody of NMCD is transferred to NENMDF,

Defendant GEO Group relies on NMCD's determination that the inmate can be safely housed at

NENMDF.[2]  *Id.* at 2.  NENMDF, nonetheless, trains the Security Threat Investigation Unit

(STIU) to interview all newly arriving inmates to verify the inmates' known enemies and gang

---

[1]  Unless otherwise noted, the summary of material facts is undisputed.

[2]  Plaintiff does not contest Defendant GEO Group's reliance upon NMCD's determination that an inmate can be housed safely at NENMDF.  Plaintiff, however, does appear to assert that NMSA 1978, § 33-1-17, mandates that NENMDF must "comply with comprehensive standards for conditions of incarceration . . . [NENMDF] assumes all liability caused by or arising out of all aspects to the provision or operation of the facility . . . [NENMDF] must have liability insurance . . . and the contract is monitored by the Corrections Department of the State of New Mexico and the contract may be terminated for non-compliance."  (Doc. 40) at 3–4.  A plain reading of NMSA 1978, § 33-1-17, evidences that the language cited by Plaintiff pertains to the terms and conditions that must be included in a contract between NMCD and a private corporation, like NENMDF.  The language does not create any duties owed to inmates or address constitutional violations.   As a result, this fact is immaterial to the Court's disposition of the Motion for Summary Judgment because it has no relation as to whether Plaintiff has established a constitutional violation under Section 1983 or a state claim.   *See Phillips v. Calhoun*, 956 F.2d 949, 951-52 (10th Cir. 1992) (immaterial facts are irrelevant to the Court's disposition) (citing *Anderson*, 477 U.S. at 248 ("under materiality requirement of Rule 56(c), '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment'")).

affiliations.  *Id.*  This process is established to ensure the new inmates can be safely housed at NENMDF.[3]  *Id.*  Moreover, if a safety concern is reported to security personnel at NENMDF, the security personnel are trained to immediately inform STIU of the safety concern.  *Id.*

Michael A. Guzman (Plaintiff) is an inmate in the custody of the NMCD.  (Doc. 1-1) at ¶ 3.  In approximately 1982, Plaintiff was convicted of one count of first degree murder, one count of attempted first degree murder, criminal sexual penetration, kidnapping, and tampering with evidence.  (Doc. 30-4) at 2.  In April 2011, Plaintiff was housed at the Guadalupe County Correctional Facility (GCCF) in New Mexico.  *Id.* at 3.  Plaintiff was also eligible for parole and scheduled to appear before the parole board.  *Id.* at 2. During that time, the Albuquerque Journal and a couple local media outlets broadcasted news reports regarding Plaintiff's crimes and impending parole hearing.  *Id.* at 2–3.  Shortly after the news reports aired, staff at GCCF asked Plaintiff if he thought he could remain in general population.  *Id.*  Plaintiff stated that he could remain in general population, but approximately a week later he informed staff that he no longer felt he could be housed in general population.  *Id.*  As a result, Plaintiff was placed in protective custody.  *Id.*  Shortly thereafter, on May 5, 2011, Plaintiff was transferred to the Penitentiary of New Mexico (PNM) in Santa Fe, New Mexico.  *Id.*  At the time of Plaintiff's transfer to PNM, Plaintiff had disclosed sixteen known and reciprocated enemies who were housed at various facilities throughout New Mexico.  (Doc. 30-2); (Doc. 30-3).  Subsequently, NMCD determined that Plaintiff's classification level was appropriate for housing at NENMDF and initiated

---

[3]  Plaintiff states that he does not contest this fact, however, he appears to argue that this practice may not occur with every inmate and, even if the interview does occur it may not be sufficient to determine safety concerns.  Plaintiff's conclusory statement and allegation is insufficient to defeat Defendants' Motion for Summary Judgment.  The Court will not consider this unsubstantiated asserted fact in its analysis because Plaintiff failed to cite to the particular portion of the record in support of the asserted fact.  *See* D.N.M.LR–Civ. 56.1(b); *see also Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1418 (10th Cir. 1993), *implied overruling on other grounds recognized by Davidson v. Am. Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003) ("Conclusory statements are insufficient to defeat a motion for summary judgment."); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (holding that allegations in a brief are insufficient to withstand a motion for summary judgment).

Plaintiff's transfer from PNM to NENMDF.  (Doc. 30-1) at 3.  Notably, none of Plaintiff's disclosed enemies were housed at NENMDF.[4]  (Doc. 32-1) at 4.

Once Plaintiff arrived at NENMDF, STIU reviewed Plaintiff's Escape Flier and CDC Summary Review, documents pertaining to Plaintiff's gang affiliations, disclosed enemies, and classification status.  *Id.*  Both documents were prepared by NMDC.  *Id.*  After reviewing documents, STIU confirmed that none of Plaintiff's disclosed enemies were housed at NENMDF and that Plaintiff did not belong to a gang.  *Id.*  Upon Plaintiff's arrival at NENMDF, STIU conducted an interview with Plaintiff.  *Id.*  During the interview, Plaintiff denied any concerns regarding his safety at NENMDF.  *Id.* at 2.  Plaintiff further informed STIU that he believed he could be housed in any area of the facility.[5]  *Id.*  STIU, nonetheless, instructed Plaintiff to report any safety concerns immediately to the housing sergeant or to any security personnel.[6]  *Id.* Based on the aforementioned, NENMDF determined that Plaintiff could be housed in general

---

[4]  Plaintiff does not contest the fact that none of his known enemies were housed at NENMDF.  Plaintiff, nevertheless, asserts that he could have or did have unknown enemies at NENMDF due to the nature of his convictions.  Plaintiff further contends that due to the publicity of his parole and the nature of his convictions NENMDF should have known he was susceptible to harm from other inmates.  The Court will not consider this unsubstantiated asserted fact in its analysis because Plaintiff failed to cite to the particular portion of the record in support of the asserted fact.  *See* D.N.M.LR–Civ. 56.1(b); *see also Martin*, 3 F.3d at 1418 ("Conclusory statements are insufficient to defeat a motion for summary judgment."); *Thomas*, 968 F.2d at 1024 (holding that allegations in brief are insufficient to withstand motion for summary judgment).

[5]  Plaintiff does not appear to dispute this fact, but Plaintiff asserts that upon his arrival at NENMDF he could not and did not know who was housed at NENMDF or if fellow inmates had a violent propensity towards individuals convicted of murder and a sexual offense.  The Court will not consider this unsubstantiated asserted fact in its analysis because Plaintiff failed to cite to the particular portion of the record in support of the asserted fact.  *See* D.N.M.LR–Civ. 56.1(b); *see also Martin*, 3 F.3d at 1418; *Thomas*, 968 F.2d at 1024.

[6]  Plaintiff does not dispute this fact, but again contends that he could not know of potential threats.  In support of his proposition, Plaintiff cites a report that contains hearsay statements from informants that state Plaintiff was assaulted due to his sex offense conviction.  This fact is immaterial as to whether Defendants' violated Plaintiff's constitutional rights under Section 1983 and, thus, will not be considered by the Court in that analysis.  *See Phillips*, 956 F.2d at 951-52 (immaterial facts are irrelevant to Court's disposition) (citing *Anderson*, 477 U.S. at 248 (1986) ("under materiality requirement of Rule 56(c), '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment'")).  Furthermore, "hearsay testimony that would be inadmissible at trial" cannot defeat a motion for "summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill."  *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).

population in the orientation pod.[7]  *Id.* at 2.

On November 6, 2011, Plaintiff was assaulted and battered in his cell by approximately 15 inmates.  (Doc. 30-1) at 4.  Plaintiff received grievous injuries to his head and torso, received immediate medical assistance, and was subsequently flown to the University of New Mexico Hospital located in Albuquerque, New Mexico.[8]  *Id.*; (Doc. 30-4) at 2.  Plaintiff had not identified any of the inmates that participated in the attack as enemies prior to the assault.  (Doc. 30-1) at 3–4.  Moreover, Plaintiff never reported any security concerns regarding his housing assignment in general population to security personnel at NENMDF.  *Id.* at 5.  Plaintiff's wife also never contacted Defendant Warden Hatch or STIU regarding Plaintiff's safety.[9]  *Id.*; (Doc. 32-1) at 2.

## IV.  *Discussion*

### A.  *Plaintiff's Fourteenth Amendment Claims and Eighth Amendment Claim for Failure to Provide Medical Treatment*

Before proceeding, it is noted that Plaintiff failed to respond to any of Defendants' arguments with respect to the Fourteenth Amendment claim and the Eighth Amendment failure to provide medical treatment claim in Count I.  *See* (Doc. 40).  As a result, he has failed to "designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at

---

[7]  Plaintiff does not dispute this fact, but asserts that Defendants "could [not] totally rely upon NMCD's determination" that Plaintiff could be housed in general population.  (Doc. 40) at 6–7.  Plaintiff cites NMSA 1978, § 33-1-17, for the proposition that Defendants owed Plaintiff a duty to protect high profile inmates with sex offense convictions.  Although NMSA 1978, § 33-1-17, provides for the terms and conditions of a contract between NMCD and a private entity, the statute does not designate a duty as Plaintiff contends.  As such, the Court finds Plaintiff's contention lacks merit.

[8]  Defendants dispute this fact arguing that it is immaterial to the Court's analysis.  The Court finds that the fact that Plaintiff received "immediate medical assistance" is material to Plaintiff's constitutional violation claims under Section 1983 and, therefore, will be considered by this Court.

[9]  Plaintiff does not dispute this fact, but argues that his wife did not know that Plaintiff was being transferred to NENMDF and, thus, did not know to report safety concerns to that facility.  Plaintiff's contention is unsubstantiated and, hence, will not be considered by this Court.  *See* D.N.M.LR–Civ. 56.1(b); *see also Martin*, 3 F.3d at 1418; *Thomas*, 968 F.2d at 1024.

324.  Moreover, Plaintiff's failure to address the due process claim and cruel and unusual punishment claim constitutes an abandonment of those claims.  *See Hinsdale v. City of Liberal, Kan.*, 19 Fed. Appx. 749, 768–69 (10th Cir. 2001).  For these reasons, the Court finds Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment due process claim in Count I and on Plaintiff's Eighth Amendment failure to provide medical treatment claim in Count I.

### B.  *Plaintiff's Eighth Amendment Claim Against Defendant Warden Hatch*

Defendant Warden Hatch contends Plaintiff's claims against him in his official capacity fail as a matter of law because Plaintiff has not established that a subordinate deprived Plaintiff of a constitutional right.  Moreover, Plaintiff has not alleged any facts or come forward with any evidence showing that he was personally involved in any constitutional violation and, thus, cannot be found liable in his official or individual capacity.  Plaintiff counters that Defendant Warden Hatch, "as the primary person in charge, certainly had [duty to protect Plaintiff from harm.]"  (Doc. 40) at 15.

To state a claim under Section 1983 a plaintiff must contend that the defendant personally participated in the alleged constitutional violations.  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  Supervisory status alone does not create Section 1983 liability.  *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008).  Rather, liability of a supervisor under Section 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams Cnty., Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (quotation omitted).  Thus, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotation and brackets

omitted).  In other words, a plaintiff may succeed in a Section 1983 action "against a defendant-supervisor by demonstrating:  (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

        In this case, Plaintiff fails to allege facts or present evidence even remotely suggesting Defendant Warden Hatch personally participated in any conduct which violated Plaintiff's constitutional rights.  Plaintiff's response mentions Defendant Warden Hatch only once, alleging liability solely on his position as Warden of NENMDF.  This allegation is wholly insufficient to create a triable issue of fact that Defendant Warden Hatch's own actions caused a deprivation of Plaintiff's constitutional rights.  Nowhere does Plaintiff allege that Defendant Warden Hatch promulgated, created, implemented, or was responsible for operating any policy, or that he acted with the state of mind required to establish the alleged constitutional deprivations.  Indeed, Plaintiff's response is void of any allegation or evidence regarding a policy that resulted in the alleged constitutional harms.  Moreover, it is uncontroverted that Defendant Warden Hatch did not participate in Plaintiff's incoming inmate interview.  There also is no evidence that Defendant Warden Hatch participated in the evaluation, assessment, or assignment of Plaintiff's classification level or housing assignment.  Without any evidence that would demonstrate an affirmative link between Defendant Warden Hatch and the alleged constitutional violations, Plaintiff has not established a genuine issue of material fact for trial.  *See Celotex*, 477 U.S. at 324.  Accordingly, Defendant Warden Hatch is entitled to summary judgment on Plaintiff's Eighth Amendment claim in Count I.

C.  *Plaintiff's Eighth Amendment Claim Against Defendants*

Defendant GEO Group contends it is entitled to summary judgment on Plaintiff's Eighth Amendment claim because Plaintiff has not identified a policy or custom that was the moving force of the alleged constitutional violation pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  Defendants also argue that Plaintiff has not presented admissible evidence to support an Eighth Amendment claim.  In response, Plaintiff asserts that *Monell* does not apply when an Eighth Amendment violation is asserted.  Plaintiff further contends the following evidence creates a triable issue of fact:  (1) Plaintiff was placed in protective custody at the Santa Rosa and Santa Fe facilities; (2) Plaintiff had a known list of enemies; (3) Plaintiff was a "high profile inmate who had a sexual conviction;" and (4) "[i]t is well known that inmates with sexual offense convictions are subject to violent assaults by other inmates."  (Doc. 40) at 14.

1.  *Municipal Liability*

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  To establish municipal liability, a plaintiff must ultimately demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (*i.e.* "that there is a direct causal link between the policy or custom and the injury alleged").  *Id.* at 694–95; *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).  Thus, when a state actor deprives a person of a constitutional right, municipal liability may be found when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers."  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *Monell*, 436 U.S. at 690).  A municipal entity may be liable where its policy is the moving force

behind the denial of a constitutional right or for an action by an authority with final

policymaking authority.  *See Monell*, 436 U.S. at 694; *see also Pembaur v. City of Cincinnati*,

475 U.S. 469, 480, 482–83 (1986).

The Tenth Circuit has described several types of actions which may constitute a

municipal policy or custom:

> A municipal policy or custom may take the form of (1) "a formal regulation or
> policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice
> that, although not authorized by written law or express municipal policy, is so
> permanent and well settled as to constitute a custom or usage with the force of
> law'"; (3) "the decisions of employees with final policymaking authority"; (4)
> "the ratification by such final policymakers of the decisions—and the basis for
> them—of subordinates to whom authority was delegated subject to these
> policymakers' review and approval"; or (5) the "failure to adequately train or
> supervise employees, so long as that failure results from 'deliberate indifference'
> to the injuries that may be caused."

*Bryson*, 627 F.3d at 788 (citations omitted).

While the Supreme Court has applied *Monell* to municipalities, the Circuit Courts of

Appeal have applied *Monell* to private entities, acting under color of law, that are sued under 42

U.S.C. § 1983.  *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 n.13 (10th Cir. 2003).

Hence, private corporations may not be held liable under Section 1983 based upon *respondeat*

*superior*, but may only be held liable where their policies caused a constitutional violation.  *See*

*id.*

Here, Plaintiff's Complaint asserts that the Defendant GEO Group failed to adequately

train and supervise its employees to insure inmates were provided reasonable protection.  (Doc.

1-1) at 7 ¶ 26.  Plaintiff, however, has not brought forth any evidence to establish that a policy or

custom of Defendant GEO Group was the moving force behind the alleged constitutional

violations.  More importantly, Plaintiff contends that such a showing is not required.  (Doc. 40)

at 12.  Plaintiff's contention lacks merit in light of the black letter law.  The Court, therefore,

finds that Plaintiff has not met his burden to demonstrate a genuine issue of material fact for trial. Thus, Defendant GEO Group is entitled to summary judgment on Plaintiff's Eighth Amendment claim in Count I.

### 2.   Eighth Amendment Claim:  Duty to Protect

The Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates.  *See Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980), *cert denied*, 450 U.S. 1041 (1981).  Prison officials are not, however, expected to prevent all inmate-on-inmate violence.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The failure of a prison official to protect an inmate from attacks by other inmates rises to the level of an Eighth Amendment violation only if the evidence shows the defendants acted with "wanton or obdurate disregard for or deliberate indifference to" the protection of prisoners' lives.  *Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir. 1988); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992).

Deliberate indifference is a higher standard than either simple negligence or heightened negligence.  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).  "Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in" the context of a failure to protect claim.  *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006).  Negligent failure to protect inmates from assaults by other inmates is not actionable under the Eighth Amendment.  *Farmer*, 511 U.S. at 835.  The Supreme Court has expressly rejected the suggestion that a prison official violates the Eighth Amendment when he might have known or should have known of a risk of harm.  *See Farmer*, 511 U.S. at 837–38.

Because this Court finds Plaintiff has failed to establish a triable issue of fact pertaining to municipal liability, the Court need not analyze Defendants' alternative argument that Plaintiff

cannot establish that a prison official knew of and deliberately disregarded a serious risk of harm. The Court notes, however, that in this matter the uncontroverted evidence clearly demonstrates that Defendants did not possess a "wanton or obdurate disregard for or deliberate indifference to" the protection of Plaintiff's life.

For instance, Defendants relied upon NMCD's determination that Plaintiff could be housed safely at NENMDF.  Despite this reliance, NENMDF's STIU conducted an interview with Plaintiff to insure his safety and address concerns.  At that interview, Plaintiff did not inform STIU about any safety concerns.  In fact, Plaintiff told STIU that he believed he could be housed safely in the general population area.  Additionally, Plaintiff's known enemies were not located at NENMDF.  Further, STIU instructed Plaintiff to immediately report any safety concerns to his housing sergeant or security personnel.  Plaintiff never complained of any threat or requested protective custody.  Although Plaintiff asserts that Defendants should have known he was susceptible to an attack because he is a convicted sex offender, Plaintiff has proffered no admissible evidence for this conclusory assertion.  *See Allen v. Zavaras*, 430 Fed. Appx. 709, 713 (10th Cir. 2011) (recognizing that evidence is sufficient to find defendant had actual knowledge of risk if "plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant . . . had been exposed to information concerning the risk and thus must have known about it . . . .").  Plaintiff's bald assertion, alone, is insufficient to create a genuine dispute as to whether Defendants were deliberately indifferent. Further, even if Defendants should have known that Plaintiff's conviction made him susceptible to a risk of harm, such a claim is not actionable under the Eighth Amendment.  *See Farmer*, 511 U.S. at 837–38.  The Court, therefore, finds that a reasonable jury could not return a verdict in

Plaintiff's favor on his Eighth Amendment claims.  Defendants, accordingly, are entitled to summary judgment on Plaintiff's Eighth Amendment claim in Count I.

 D.  *Plaintiff's New Mexico Tort Claims Act and State Law Negligence Claims*

Having granted summary judgment on Plaintiff's federal claims, Plaintiff is left with a NMCTA claim (Count II) and a state law negligence claim (Count III).  Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction."  "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal citation omitted).  The Court, thus, declines to exercise supplemental jurisdiction over Plaintiff's NMCTA and state law negligence claims.  Accordingly, the Court will dismiss Plaintiff's NMCTA claim in Count II and state law negligence claim in Count III of the Complaint without prejudice.

IT IS ORDERED that

1.  Defendants the GEO Group, Inc. and Timothy B. Hatch's Motion for Summary Judgment and Memorandum of Law in Support (Doc. 32) is granted;

2.  summary judgment will be entered in favor of Defendants the GEO Group and Timothy B. Hatch, in his individual and official capacity, on Count I of Plaintiff's Complaint (Doc. 1-1), filed January 17, 2014;

3.  Plaintiff's federal claims against Defendants the GEO Group and Timothy B. Hatch, in his individual and official capacity, in Count I of the Complaint will be dismissed with prejudice;

4.  Plaintiff's state law claims against Defendants the GEO Group and Timothy B. Hatch,

in his individual and official capacity, in Count II and Count III of the Complaint will be dismissed without prejudice; and

5.   Plaintiff's damages claim against Defendants the GEO Group and Timothy B. Hatch, in his individual and official capacity, in Count IV will be dismissed with prejudice as no substantive claims remain to support a claim for damages.

_____
UNITED STATES DISTRICT JUDGE