IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL A. GUZMAN,

        Plaintiff,

v.  No.  1:14-cv-00055-KG/SCY

NEW MEXICO CORRECTIONS DEPARTMENT, *an agency of the State of New Mexico*; STATE OF NEW MEXICO, GREGG MARCANTEL*, Secretary of the New Mexico Corrections Department*, COLLEEN MCCARNEY, *individually and in her official capacity, as an employee of the New Mexico Corrections Department*,

        Defendants.

MEMORANDUM OPINION AND ORDER

      This matter comes before the Court upon Defendants New Mexico Corrections Department, an Agency of the State of New Mexico, Gregg Marcantel and Colleen McCarney's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Motion for Summary Judgment), filed May 28, 2014.  (Doc. 30).  On July 7, 2014, Plaintiff responded and Defendants replied on July 16, 2014.  (Docs. 41 and 44).  Having reviewed the Motion for Summary Judgment, the accompanying briefs, and the evidence of record, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's federal claims for violation of 42 U.S.C. § 1983 in Count I.  The Court, however, declines to exercise supplemental jurisdiction over Plaintiff's New Mexico Tort Claims Act (NMTCA) and state law negligence claims and, accordingly, dismisses Plaintiff's state law claims in Count II and Count III without prejudice.

I.    *The Complaint for Damages (Doc. 1-1)*

      Plaintiff Michael A. Guzman (Plaintiff) brings this lawsuit under 42 U.S.C. § 1983,

asserting a Fourteenth Amendment substantive due process violation and an Eighth Amendment violation for failure to protect (Count I).  Plaintiff also brings a cause of action under the NMTCA, NMSA 1978, §§ 41-4-1 to 41-4-27, for negligence (Count II), and a state law claim for negligence (Count III).  Plaintiff seeks compensatory and punitive damages against all Defendants (Count IV).

Defendants now move for summary judgment on all Counts.  Plaintiff opposes the Motion for Summary Judgment in its entirety.

*II.    Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the non-movant.  *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).  The movant bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted).  The non-movant may not avoid summary judgment by resting upon the mere allegations or denials of its pleadings.  *Bacchus Indus., Inc.*, 939 F.2d at 891.

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

If the plaintiff successfully carries his two-part burden, the burden then shifts to the defendant. *Id.* At that point, a defendant must show that there are no disputes of material fact about whether his conduct was objectionably reasonable in light of clearly established law and the information known to the defendant at the time. *Id.* A motion for summary judgment based on qualified immunity, however, should be "properly denied," if "the record shows an unresolved dispute of historical fact relevant to" the qualified immunity analysis. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

III.    *Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff*[1]

The New Mexico Corrections Department (NMCD), an agency of the State of New Mexico, retains custody and control of all individuals committed by courts to incarceration.[2]

---

[1] Unless otherwise noted, the summary of material facts is undisputed.

[2] It is undisputed that in the Complaint, Plaintiff alleges that NMCD owes a duty to screen inmates and house inmates in an environment that would not cause harm to the inmates. (Doc. 1-1) at ¶ 8. Although the Court

Defendant Gregg Marcantel (Defendant Marcantel) is the Secretary of NMCD. *Id.* at 10. Defendant Colleen McCarney (Defendant McCarney) is the Acting Classification Bureau Chief of NMCD. *Id.* at ¶ 12; (Doc. 30-1) at 1. As the Acting Classification Bureau Chief, Defendant McCarney is responsible for placement and review of inmates in the prison system of the State of New Mexico. (Doc. 30-1) at 1. Defendant McCarney's duties also include updating policies regarding classification, good time, and special management. *Id.* Defendant McCarney further provides direction to classification staff and unit managers in response to questions regarding classification and good time issues. *Id.* Finally, Defendant McCarney reviews placements in Interim Level IV and appropriate placement following Level IV status. *Id.*

It is NMCD's policy to place inmates in the lowest custody and restrictive environment possible to achieve the goals of the corrections system. *Id.* at 3. The inmate placement process includes the consideration of the following factors: whether bed space is available at the appropriate Level facility, clearances, and whether the inmate has any known enemies at the facility.[3] *Id.* The "clearance" factor refers to whether an inmate requires medical or mental health care. *Id.* at 2. When determining and reviewing the "known enemies" factor, Defendant

---

recognizes that the Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates, that duty is not absolute. *See Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980), *cert denied*, 450 U.S. 1041 (1981); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (prison officials not expected to prevent all inmate-on-inmate violence). More importantly, Plaintiff's conclusory statements within his Complaint are insufficient to create a triable issue of fact at the summary judgment stage. *See Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1418 (10th Cir. 1993), *implied overruling on other grounds recognized by Davidson v. Am. Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003) ("Conclusory statements are insufficient to defeat a motion for summary judgment."); *Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970) ("summary judgments cannot be made to rest on purely conclusory statements, either in pleading or affidavit form"); *see also* Fed. R. Civ. P. 56(c); 56(e). Therefore, the Court will not consider Plaintiff's unsubstantiated conclusory statements in its analysis.

[3] Plaintiff states that he does not contest this fact, however, Plaintiff contends that Defendants owed Plaintiff the additional duty to not house convicted sex offenders, like Plaintiff, with other inmates unless his safety could be assured. (Doc. 41) at 4. Plaintiff further argues that "[i]nmates with violent sexual offense convictions are always at danger in a prison setting." *Id.* Plaintiff has not cited any authority or a particular portion of the record in support of his asserted facts. As such, the Court will not consider Plaintiff's uncorroborated facts in its analysis. *See* D.N.M.LR–Civ. 56.1(b); *see also Martin*, 3 F.3d at 1418 ("Conclusory statements are insufficient to defeat a motion for summary judgment."); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (holding that allegations in a brief are insufficient to withstand a motion for summary judgment).

McCarney considers whether the inmate has disclosed known enemies at the facility in which the inmate is placed.[4] *Id.* at 1–2.  This determination also includes whether other inmates have identified the placement inmate as an enemy.  *Id.*  If an inmate fails to disclose his enemies, the NMCD is unable to place the inmate away from his enemies.  *Id.* at 4. The NMCD does not deny an inmate the right to disclose his enemies, nor does it exercise any discretion in prohibiting an inmate from designating enemies.  *Id.*  The NMCD, however, does rely upon the known disclosed enemies list in order to avoid placing transferee inmates in harmful situations.  *Id.*

The NMCD implements six different levels of incarceration.  *Id.* at 2.  "Level One is minimum custody general population in dormitory settings.  Level Two is minimum restriction custody general population in dormitory settings.  Level Three is medium custody general population in a single or double cell setting.  Level Four is close custody general population in single cell settings with limited movement and programming, these are usually the more violent offenders and designated gang members.  Levels Five and Six are the most restrictive custody statuses for inmates posing the greatest risk to institutional security and the safety of others."  *Id.*  Levels Five and Six are behavior based.  Level Five is utilized for "reintegration, meaning the

---

[4] Plaintiff agrees, in part, but argues that Defendants owed him the further duty to ensure his safety because he is a convicted sex offender.  Plaintiff cites no authority in support of this duty.  Plaintiff's allegation, thus, is insufficient to withstand Defendants' Motion for Summary Judgment.  *Martin*, 3 F.3d at 1418 ("Conclusory statements are insufficient to defeat a motion for summary judgment."); *Thomas*, 968 F.2d at 1024 (holding that allegations in a brief are insufficient to withstand a motion for summary judgment).

Plaintiff further disputes this fact because he "had little knowledge in advance of the transfer as to where he was being transferred and thus a lack of knowledge as to whether he would be in danger." (Doc. 41) at 5.  This asserted fact is uncorroborated.  *See* Fed. R. Civ. P. 56(c); *see also BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) (an affidavit is "an appropriate vehicle to establish a fact for summary judgment purposes").

Plaintiff also contends Defendants had notice he was in danger because he was removed from general population to protective custody at the Penitentiary of New Mexico (PNM) in Santa Fe, New Mexico.  *Id.*  Whether Defendants had notice, i.e. knew that Plaintiff's safety was at risk, is a legal question and not a factual assertion.  *Chavez v. Cty. of Bernalillo*, 3 F. Supp. 3d 936, 951 n.8 (D.N.M. 2014) (citing *Ruiz v. City of Brush*, 2006 WL 1816454, at *4 (D. Colo. 2006) ("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute.  Legal argument . . . should be reserved for separate portions of the brief.'")).

inmate has progressed through the appropriate steps" and may return to general population. *Id.* "Level Six is for inmates who require protection and those who pose a threat to" security. *Id.* at 3. "Inmates placed on protective custody do not have the ability to progress back to general population unless the issues placing the [inmates] in Level Six no longer exist. *Id.* at 2–3. Defendant McCarney has authority to place inmates in Level Six protective custody. This placement, however, requires the review and approval of the Deputy Director of the NMCD. *Id.* at 5.

      Plaintiff is an inmate in the custody of the NMCD. (Doc. 1-1) at ¶ 3. In approximately 1982, Plaintiff was convicted of one count of first degree murder, one count of attempted first degree murder, criminal sexual penetration, kidnapping, and tampering with evidence. (Doc. 63) at 4. In April 2011, Plaintiff was housed at the Guadalupe County Correctional Facility (GCCF) in New Mexico. *Id.* Plaintiff was also eligible for parole and scheduled to appear before the parole board. *Id.* During that time, certain local media outlets broadcasted news reports regarding Plaintiff's crimes and impending parole hearing. *Id.* Shortly after the news reports aired, staff at GCCF asked Plaintiff if he thought he could remain in general population. *Id.* Plaintiff stated that he could remain in general population, but approximately a week later he informed staff that he no longer felt he could be housed in general population. *Id.* As a result, Plaintiff was placed in protective custody. *Id.*

      On May 5, 2011, Plaintiff was transferred to the Penitentiary of New Mexico (PNM) in Santa Fe, New Mexico, and placed in the segregation unit until a space was available in the appropriate level. (Doc. 30-1) at 2; (Doc. 63) at 4. At the time of Plaintiff's transfer to PNM, Plaintiff had disclosed sixteen known and reciprocated enemies who were housed at various facilities throughout New Mexico. (Doc. 63) at 4. Some of Plaintiff's known enemies were

housed at PNM, which resulted in Plaintiff's placement in Level Six protective custody shortly after his arrival. (Doc. 30-1) at 3. Subsequently, the NMCD determined that Plaintiff's classification level was appropriate for either protective custody, long-term segregation, transfer to a facility outside of New Mexico, or placement at the Northeast New Mexico Detention Facility (NENMDF).[5] *Id.* Consequently, Plaintiff was transferred to NENMDF in the Level Three general population unit. NMCD concluded NENMDF was the only facility in New Mexico where Plaintiff had no known enemies and other inmates had not designated Plaintiff as an enemy.[6] *Id.*; *see also* (Doc. 30-2); (Doc. 30-3). NMCD further concluded that Plaintiff did

---

[5] Plaintiff agrees, in part, but argues that NENMDF was not a safe facility due to his convictions and the recent publicity regarding his parole. In support of his assertion, Plaintiff cites Defendant McCarney's affidavit and the attachments. Plaintiff does not cite to a particular portion of the record in support of his assertion. The Court assumes that Plaintiff's contention relies upon the hearsay statements from informants that allege Plaintiff was assaulted due to his sexual offense conviction. This fact is immaterial as to whether Defendants violated Plaintiff's constitutional rights under Section 1983 and, thus, will not be considered by the Court in that analysis. *See Phillips v. Calhoun*, 956 F.2d 949, 951–52 (10th Cir. 1992) (immaterial facts are irrelevant to Court's disposition) (citing *Anderson*, 477 U.S. at 248 (1986) ("under materiality requirement of Rule 56(c), '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment'")). Furthermore, "hearsay testimony that would be inadmissible at trial" cannot defeat a motion for "summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).

[6] Plaintiff contends that Defendants failed to properly "clear" or "vet" NENMDF to determine whether his safety was at risk. (Doc. 41) at 7. Plaintiff fails to allege any facts or bring forth any evidence to demonstrate any deficiencies in Defendants' screening and placement process. As a result, the Court will not consider Plaintiff's unsubstantiated fact in its analysis. *See* Fed. R. Civ. P. 56(c); *Martin*, 3 F.3d at 1418 ("Conclusory statements are insufficient to defeat a motion for summary judgment."); *Thomas*, 968 F.2d at 1024 (holding that allegations in a brief are insufficient to withstand a motion for summary judgment).

Plaintiff also claims that he could not properly determine whether NENMDF was a safe facility because "he did not know much about the facility, nor who was there nor the fact he was being transferred there with enough time to determine if would be in danger." (Doc. 41) at 7. Plaintiff cites his answers to interrogatories for support. *Id.* In reply, Defendants argue that Plaintiff's interrogatory answers are inadmissible because Plaintiff did not attach a signed verification, nor did he cite with particularity to the portions of the record that support his assertions. (Doc. 44) at 5 n.1. The Court is mystified by Defendants contention that Plaintiff failed to cite to the specific sections of the record because Defendants also failed to comply with this Court's local rule. *See* (D.N.M.LR-Civ. 56.1(b)). Nonetheless, the Court agrees that Plaintiff's failure to verify the interrogatory answers could result in the interrogatory answers being inadmissible at trial and, thus, not appropriate for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Evid. 901. Assuming *arguendo*, that Plaintiff's interrogatory answers are admissible, the Court finds that the interrogatory answers are replete with unsubstantiated statements and, therefore, cannot withstand Defendants' Motion for Summary Judgment. For example, Plaintiff's interrogatory answers maintain that his safety was at risk due to the nature of his conviction, length of incarceration, and known enemies. *See* (Doc. 41-1) at 11–12, 14, 18. Plaintiff's interrogatory answers further state that Defendants failed to properly investigate his transfer. *Id.* at 11–12, 18. As this Court previously ruled, such bare assertions may not preclude summary

7

not require "clearance" for a specific medical or mental health treatment.  (Doc. (30-1) at 2.  Defendant Marcantel was not informed nor involved in Plaintiff's transfer to NENMDF.  *Id.* at 5.

On November 3, 2011, Plaintiff arrived at NENMDF.  (Doc. 30-4) at 3.  Upon Plaintiff's arrival, NENMDF staff reviewed Plaintiff's Escape Flier and CDC Summary Review, documents pertaining to Plaintiff's gang affiliations, disclosed enemies, and classification status.[7]  (Doc. 63) at 5.  Both documents were prepared by NMCD.  *Id.*  After reviewing the documents, NENMDF confirmed that none of Plaintiff's disclosed enemies were housed at NENMDF and that Plaintiff did not belong to a gang.  *Id.*  That same day, NENMDF staff interviewed Plaintiff.  *Id.*  During the interview, Plaintiff denied any concerns regarding his safety at NENMDF.  *Id.*; (Doc. 30-1) at 4.  Further Plaintiff informed NENMDF staff that he believed he could be housed in any area of the facility.[8]  (Doc. 63) at 5; (Doc. 30-1) at 4.  NENMDF staff, nonetheless, instructed Plaintiff to report any safety concerns immediately to the housing sergeant or to any security personnel.  (Doc. 63) at 5.  Based on the aforementioned, Plaintiff was placed in the general population orientation pod.  *Id.* at 5–6

On November 6, 2011, Plaintiff was assaulted and battered in his cell by approximately 15 inmates.  (Doc. 30-1) at 4.  Plaintiff received grievous injuries to his head and torso, requiring immediate medical assistance.  He was subsequently flown to the University of New Mexico

---

judgment. *See Bacchus Indus., Inc.*, 939 F.2d at 891.  Further, Plaintiff's interrogatory answers that he was transferred without any consideration as to whether he had known enemies at NENMDF is blatantly contradicted by the record evidence. *See Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

[7] Neither party provided the date of Plaintiff's arrival at NENMDF.  The record, nonetheless, clearly evidences that Plaintiff arrived to NENMDF on November 3, 2011.  *See* (Doc. 30-4) at 3.

[8] Plaintiff disputes this fact stating that upon his arrival at NENMDF he could not and did not know who was housed at NENMDF or if fellow inmates had a violent propensity towards individuals convicted of murder and a sexual offense.  The Court will not consider this unsubstantiated asserted fact in its analysis because Plaintiff failed to cite to the particular portion of the record in support of the asserted fact.  *See* D.N.M.LR–Civ. 56.1(b); *see also Martin*, 3 F.3d at 1418 1418 ("Conclusory statements are insufficient to defeat a motion for summary judgment."); *Thomas*, 968 F.2d at 1024 (holding that allegations in a brief are insufficient to withstand a motion for summary judgment).

Hospital located in Albuquerque, New Mexico. (Doc. 63) at 6. Plaintiff had not identified any of the inmates that participated in the attack as enemies prior to the assault. (Doc. 30-1) at 3–4; (Doc. 41) at 7. Moreover, Plaintiff never reported any security concerns regarding his housing assignment in general population to security personnel at NENMDF. (Doc. 30-1) at 5. Plaintiff's wife also never contacted a member of NMCD or NENMDF regarding Plaintiff's safety. *Id.*

IV.   *Discussion*

> A. *Plaintiff's Claims Against the State of New Mexico, the NMCD, and Defendants Marcantel and McCarney, in their official capacities, are Barred by the Eleventh Amendment*

In this case, it is undisputed that the State of New Mexico and the NMCD are entitled to Eleventh Amendment immunity. *See* (Doc. 30) at 9; (Doc. 41) at 13; (Doc. 44) at 9. Further, Plaintiff concedes Defendants Marcantel and McCarney are entitled to immunity in their official capacities from his damages claims. (Doc. 41) at 13.

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represented only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994) (citation omitted). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 785–

86 (1991); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). Thus, an official capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Here, Plaintiff names Defendant Marcantel as "the Secretary of the Department of Corrections of the State of New Mexico." (Doc. 1-1) at 5. Plaintiff's Complaint does not clearly state that Plaintiff is suing Defendant Marcantel in his individual capacity. As a result, the Court finds that Plaintiff is suing Defendant Marcantel in his official capacity only.[9] *See Johnson v. Okla. Dep't of Transp. et al.*, 14-CV-00945, at *4 (10th Cir. April, 20, 2016) (unpublished) (citing *Sanderfer v. Nichols*, 62 F.3d 151, 152 n.1 (6th Cir. 1995) ("[O]rdinarily, when the complaint in a § 1983 action does not specify that a defendant is sued in her individual capacity, we have held that such a defendant has been sued in her official capacity only."); *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997) (same)).

Plaintiff also names Defendants McCarney, in her individual and official capacity, and the State of New Mexico. Plaintiff, however, only seeks compensatory and punitive damages for an undeclared amount against Defendants Marcantel and McCarney, in their official capacities, and the State of New Mexico. (Doc. 1-1) at 11. Moreover, Plaintiff concedes that the Defendants have not waived their immunity, nor has Congress abrogated Defendants' sovereign immunity. (Doc. 41) at 13. Hence, the Court finds that the Eleventh Amendment bars Plaintiff's claims for money damages in Count I, Count II, and Count III against Defendants Marcantel and

---

[9] Assuming *arguendo* that Plaintiff named Defendant Marcantel in his individual capacity, the Court finds that Defendant Marcantel, in his individual capacity, is entitled to summary judgment. The evidence, viewed in the light most favorable to Plaintiff, demonstrates that Defendant Marcantel did not participate in Plaintiff's transfer. Plaintiff, furthermore, has not alleged any facts or presented any evidence that Defendant Marcantel personally knew of any substantial risk of harm to Plaintiff. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (to state a claim under Section 1983 plaintiff must contend defendant personally participated in alleged constitutional violations.). Without any evidence that would demonstrate an affirmative link between Defendant Marcantel and the alleged constitutional violations, Plaintiff has not established a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324. Accordingly, Defendant Marcantel, in his individual capacity, is entitled to summary judgment on Plaintiff's Eighth Amendment claim in Count I.

McCarney, in their official capacities, and the State of New Mexico, and, accordingly, the Court will dismiss those claims without prejudice. *See Ky.*, 473 U.S. at 169 (Eleventh Amendment bars federal jurisdiction over state official acting in official capacity in suit for money damages); *see also Pennhurst State Sch. & Hosp.*, 465 U.S. at 101 (Eleventh Amendment bars suit in federal court against a state or one if its departments, absent consent, regardless of nature of relief sought).

With respect to the NMCD, it is well settled that it "is not a person subject to suit under § 1983." *Blackburn v. Dep't of Corrs.*, 172 F.3d 62, 1999 WL 94912, at *1 (10th Cir. 1999) (citation omitted). Moreover, by virtue of the Eleventh Amendment, the NMCD is immune from suit regardless of the relief sought. *Id.* (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996); *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998)). The NMCD is also entitled to immunity because it is "state-controlled and funded and therefore is considered part of the state shielded by Eleventh Amendment immunity." *Id.* (citing *Buchwald v. Univ. of N.M. Sch. Of Med.*, 159 F.3d 487 n.3 (10th Cir. 1998) (discussing factors for determining whether an entity is an arm of the state); N.M.S.A. 1978, § 6–3–1 (state agency includes any department); N.M.S.A. 1978, § 9–3–3 to –4 (corrections department is cabinet department run by corrections secretary who is appointed by governor with consent of senate); General Appropriation Act of 1998, 1998 Advance Legislative Serv., Ch. 116, 1386–93 (appropriations for state department of corrections)). Therefore, the Court finds that the NMCD is entitled to immunity pursuant to the Eleventh Amendment and, consequently, Plaintiff's claims in Count I, Count II, and Count III against the NMCD will be dismissed without prejudice.

B. *Plaintiff's Waived Claims*

Before proceeding, it is noted that Plaintiff failed to respond to any of Defendants'

arguments with respect to the Fourteenth Amendment claim against all Defendants and the Eighth Amendment supervisory liability claim against Defendant Marcantel in Count I. *See* (Doc. 40). As a result, Plaintiff has failed to "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Moreover, Plaintiff's failure to address the due process claim and the supervisory liability claim constitutes an abandonment of those claims. *See Hinsdale v. City of Liberal, Kan.*, 19 Fed. Appx. 749, 768–69 (10th Cir. 2001). For these reasons, the Court finds Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claim in Count I and summary judgment is awarded to Defendant Marcantel on Plaintiff's Eighth Amendment supervisory liability claim in Count I. Plaintiff's claims will be dismissed with prejudice.

In sum, Plaintiff has an Eighth Amendment claim for money damages against Defendant McCarney, in her individual capacity (Count I). Plaintiff also has a cause of action against Defendant McCarney, in her individual capacity, under the NMTCA for negligence (Count II), and a state law claim for negligence (Count III).

    *C. Plaintiff's Eighth Amendment Claim Against Defendant McCarney, in Her Individual Capacity, Under Count I*

Defendant McCarney contends that she is entitled to summary judgment on Plaintiff's Eighth Amendment duty to protect claim because Plaintiff cannot establish that she knew of and disregarded an excessive risk to Plaintiff's safety. Defendant McCarney further argues that if the Court finds that Plaintiff's Eighth Amendment rights were violated, she did not have notice that the right was clearly established at the time of the incident. Plaintiff asserts that a constitutional violation occurred because Defendant McCarney "knew or should have known of a great risk to Mr. Guzman." (Doc. 41) at 13. Plaintiff cites the following evidence in support of his proposition: (1) Plaintiff was placed in protective custody at the GCCF and the PNM facilities;

(2) Plaintiff's parole and subsequent denial were publicized; and (3) Plaintiff "was a high-profile inmate, convicted of a sexual offense in which his victim was killed by him." *Id.* at 12–13.

The Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates. *See Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980), *cert denied*, 450 U.S. 1041 (1981). Prison officials are not, however, expected to prevent all inmate-on-inmate violence. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The failure of a prison official to protect an inmate from attacks by other inmates rises to the level of an Eighth Amendment violation only if the evidence shows the defendants acted with "wanton or obdurate disregard for or deliberate indifference to" the protection of prisoners' lives. *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992); *Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir. 1988).

Under the deliberate indifference standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (quoting *Farmer*, 511 U.S. at 847). The Supreme Court has expressly rejected the suggestion that a prison official violates the Eighth Amendment when she might have known or should have known of a risk of harm. *Farmer*, 511 U.S. at 837–38. Further, a prison official may still be free from liability in situations where the harm ultimately occurs if the official responded reasonably to the risk of that harm. *Id.* at 844–45.

In the case at bar, Defendant McCarney is entitled to qualified immunity because Plaintiff has not produced sufficient evidence that Defendant McCarney possessed a "wanton or obdurate disregard for or deliberate indifference to" the protection of Plaintiff's life. The evidence,

viewed in the light most favorable to Plaintiff, demonstrates that Defendant McCarney did not know of a substantial risk to Plaintiff's safety; and, assuming she did, Defendant McCarney took reasonable measures to abate any risk. For example, Defendant McCarney followed the NMCD's policies for transferring and placing Plaintiff in the appropriate level of incarceration at NENMDF. Specifically, Defendant McCarney determined that due to Plaintiff's disclosed enemies the only options for Plaintiff's "placement in the corrections system was protective custody, long-term segregation, transfer out of state or placement in" NENMDF. (Doc. 30) at 4. Consequently, Plaintiff was transferred to NENMDF because it was the only facility in New Mexico where no known enemies were housed. When Plaintiff was transferred to NENMDF, NENMDF staff interviewed Plaintiff. At that time, Plaintiff was asked if he knew of any enemies located at NENMDF. Plaintiff stated he had none. Additionally, Plaintiff's wife never informed NENMDF staff—let alone Defendant McCarney—that Plaintiff was in danger at NENMDF. And, as of his arrival on November 3, 2011, Plaintiff never complained of any threat or requested protective custody prior to the incident on November 6, 2011. There is a lack of evidence that Defendant McCarney knew Plaintiff was in danger at NENMDF. Just as importantly, there is evidence detailing the precautions taken to place Plaintiff in a safe housing unit. In view of the foregoing, no reasonable jury could find facts supporting Defendant McCarney was deliberately indifferent to Plaintiff's safety. Hence, Defendant McCarney is entitled to summary judgment on Plaintiff's Eighth Amendment claim in Count I.

     Moreover, Plaintiff asserts that Defendant McCarney should have known Plaintiff was susceptible to an attack because he was a "high-profile inmate, convicted of a sexual offense in which his victim was killed by him." This assertion is without merit. The only evidence Plaintiff cites in support of his assertion are unidentified third party statements relayed to an

investigating officer for the incident report. *See* (Doc. 30-4) at 4–5. Those statements, however, are inadmissible hearsay and, as such are insufficient for the summary judgment stage. *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995) ("[H]earsay testimony that would be inadmissible at trial" cannot defeat a motion for "summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill."). Plaintiff, moreover, has failed to assert any facts or proffer evidence showing that Defendant McCarney knew of the potential risks associated with Plaintiff's sexual offense conviction or the media broadcasts regarding Plaintiff's parole. *See Allen v. Zavaras*, 430 Fed. Appx. 709, 713 (10th Cir. 2011) (recognizing that evidence is sufficient to find defendant had actual knowledge of risk if "plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant . . . had been exposed to information concerning the risk and thus must have known about it . . . ."). Plaintiff's assertions, alone, are insufficient to create a genuine dispute as to whether Defendant McCarney was deliberately indifferent. *See Celotex*, 477 U.S. at 324; *Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1418 (10th Cir. 1993), *implied overruling on other grounds recognized by Davidson v. Am. Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). Assuming *arguendo* that Defendant McCarney *should* have known about the risk to Plaintiff's safety associated with his convictions and the media broadcasts, such a claim is not actionable under the Eighth Amendment. *See Farmer*, 511 U.S. at 837–38 (Eighth Amendment not violated when prison officials might have known or should have known of risk of harm).

It also appears that Plaintiff contends that Defendant McCarney should have placed him

in protective custody at NENMDF or transferred him to an out of state penitentiary because he was placed in protective custody at two other facilities: GCCF and PNM. The undisputed facts, viewing in the light most favorable to Plaintiff, shows that Plaintiff was placed in protected custody at GCCF and PNM only after Plaintiff identified enemies or reported safety concerns. (Doc. 30-1) at 2, 3. Conversely, Plaintiff never reported or identified any enemies prior to or during his time in general population at NENMDF. As a result, Defendant McCarney could not have known that Plaintiff's safety was at risk in general population at NENMDF.

Further, the decision to house Plaintiff in an out state facility or in protective custody in NENMDF, is the type of decision that depends upon the measured judgment of corrections personnel. It is well settled that prison officials have broad administrative and discretionary authority over the institutions they manage. *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). This broad latitude is appropriate because the management of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). This Court, therefore, gives great deference to Defendant McCarney's decision concerning Plaintiff's placement and classification while in the NMCD's custody. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Accordingly, the Court finds that Plaintiff has not brought forth evidence demonstrating that Defendant McCarney failed to reasonably abate a substantial risk to Plaintiff's safety. The Court, thus, concludes that a reasonable jury could not find facts supporting Plaintiff's Eighth Amendment claim because the evidence does not support a finding that Defendant McCarney was deliberately indifferent to Plaintiff's safety. In the absence of a constitutional violation, Defendant McCarney is entitled to qualified immunity, and, Plaintiff's Eighth Amendment claim is dismissed.

D.  *Plaintiff's New Mexico Tort Claims Act and State Law Negligence Claims*

Having granted summary judgment on Plaintiff's federal claims, Plaintiff is left with a NMCTA claim (Count II) and a state law negligence claim (Count III) against Defendant McCarney. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal citation omitted). Hence, the Court declines to exercise supplemental jurisdiction over Plaintiff's NMCTA and state law negligence claims. Accordingly, the Court will dismiss Plaintiff's NMCTA claim in Count II and state law negligence claim in Count III of the Complaint without prejudice.

IT IS, THEREFORE, ORDERED that

1. Defendants New Mexico Corrections Department, an agency of the State of New Mexico, Gregg Marcantel and Colleen McCarney's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 30) is granted;

2. summary judgment will be entered in favor of Defendants Gregg Marcantel and Colleen McCarney, in their individual capacities, on Count I of Plaintiff's Complaint (Doc. 1-1), filed January 17, 2014;

3. all claims in Plaintiff's Complaint as to Defendant New Mexico Corrections Department, Defendant State of New Mexico, and Defendant Greg Marcantel and Defendant Colleen McCarney, in their official capacities, will be dismissed without prejudice;

4. Plaintiff's Fourteenth Amendment claims in Count I of the Complaint, as to Defendant Gregg Marcantel and Colleen McCarney, in their individual capacities, will be dismissed with prejudice;

5.  Plaintiff's Eighth Amendment claim for supervisory liability in Count I of the Complaint as to Defendant Gregg Marcantel, in his individual capacity, will be dismissed with prejudice;

6.  Plaintiff's Eighth Amendment claim in Count I of the Complaint as to Defendant Gregg Marcantel and Defendant Colleen McCarney, in their individual capacities, will be dismissed with prejudice;

7.  Plaintiff's state law claims against Defendant Colleen McCarney, in her individual capacity, in Count II and Count III of the Complaint will be dismissed without prejudice; and

8.  Plaintiff's damages claim against Defendant Gregg Marcantel and Defendant Colleen McCarney, in their individual capacities, in Count IV will be dismissed with prejudice as no substantive claims remain to support a claim for damages.

_____
UNITED STATES DISTRICT JUDGE